**Refugio Gomez GUEVARA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–97–00988–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 24, 1999.

Stanley G. Schneider, Houston, for Appellant.

John B. Holmes, Carmen Castillo Mitchell, Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices TAFT and PRICE.[1]

## OPINION

FRANK C. PRICE, Justice (Assigned).

After an adverse ruling on his motion to suppress and pursuant to a plea bargain, appellant, Refugio Gomez Guevara, entered a plea of guilty to the felony offense of possession of cocaine. The trial court assessed punishment as an habitual offender at 25–years confinement. On appeal, appellant presents eight points of error challenging the denial of his motion to suppress. We reverse the judgment and remand the cause.

### Factual Summary

During the motion to suppress hearing, Officer James R. McClain testified that at approximately 3:45 p.m. on November 13, 1996, he received a telephone call from a totally anonymous informant who told him a drug deal would take place between 4:30 p.m. and 5:00 p.m. that day at the Shipley's Do-nut shop at 9251 Gulf Freeway. The informant told McClain that "Cucco" would arrive driving a white Chevrolet Astrovan, and the informant provided the license plate number for the van and the location of the drugs. He said the cocaine would be in Cucco's pocket. He identified Cucco as a 5'8" male with black and slightly gray hair, 50 years old and having a grayish mustache. McClain discussed the call with his partner, Detective Randall French, and the two left for the surveillance. They observed a van fitting the description pull into the parking lot. McClain approached the van and asked the driver if he was "Cucco." Appellant iden-

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

tified himself, and his shirt had "Cucco" printed on it. McClain asked appellant to exit the vehicle, and he conducted a pat down for weapons and contraband. McClain did not ask permission to pat down appellant. He felt two individually wrapped packages in appellant's pants pockets. McClain believed this to be cocaine based on the information he received from the informant as well as his experience in other narcotics cases. In addition to the cocaine, McClain recovered $382 from appellant's wallet. There were no other witnesses at the hearing, and the judge denied the motion to suppress.

A month later, the court heard appellant's motion to reopen testimony in the motion to suppress. During this hearing, Fred Gonzales testified he was arrested for family violence around November 13, 1996. While in jail, Officer Jerome Hill visited him and told him he would help Gonzales if he "could give him a name." Hill asked Gonzales to "call somebody for him to bring him something." Gonzales called appellant, and they set up a meeting place. Gonzales was released from jail later that day.

Hill testified he did not set up a deal with Gonzales. Officer McClain testified he did not know the identity of the informant, and did not believe it was Gonzales.

The court determined there was sufficient probable cause to conduct an investigatory stop, and the real issue was whether McClain lied during the earlier hearing about the source of the information. For the second time, the court denied the motion to suppress.

### Reasonable Suspicion/Probable Cause for Stop

In his first and second points of error, appellant claims the trial court erred in failing to suppress all fruits of his arrest, because the State failed to sustain its burden of demonstrating either reasonable suspicion or probable cause for appellant's initial stop in violation of the Fourth Amendment and the Texas Constitution.

### Waiver

■ The State argues these points of error were waived because there was no timely request, objection, or motion stating the grounds for the error. The motion to suppress addressed probable cause to arrest, the search incident to the arrest, and judicial authorization for detaining or searching appellant. Appellant's motion to suppress implied objection to the initial stop; therefore, appellant preserved error. We overrule the State's waiver contention.

### Standard of Review

■ The standard of review of a trial court's ruling on a motion to suppress is abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Curry v. State,* 965 S.W.2d 32, 33 (Tex. App.—Houston [1st Dist.] 1998, no pet.). We will independently review a trial court's determination of reasonable suspicion and probable cause, because this requires the application of law to facts. *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997); *Curry,* 965 S.W.2d at 34. We will, however, give great weight to certain inferences drawn by the trial judge.

■ The amount of deference a reviewing court affords to a trial court's ruling on a "mixed question of law and fact" (such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue. *Guzman,* 955 S.W.2d at 87. Appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* at 89. The appellate courts may review *de novo* "mixed questions of law and fact" that do not require evaluations of credibility and demeanor. *Id.* at 87.

■ The relevant facts and circumstances are not in dispute in this case, and the resolution of this appeal does not turn on an evaluation of the credibility of a particular witness. Therefore, we review, *de novo,* the question of whether the detaining officer had a reasonable, particularized, and objective basis for suspecting appellant was engaged in criminal activity. *Guzman,* 955 S.W.2d at 89.

### Reasonable Suspicion

■■ It is well established that circumstances short of probable cause will justify temporary detention for investigative purposes. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim. App.1989). Under *Terry,* to justify investigative detention, officers must have articulable facts which, based on their experience and personal knowledge, and coupled with logical inferences from those facts, would warrant the intrusion on the detainee. *Jones v. State,* 565 S.W.2d 934, 936 (Tex.Crim.App.1978). These facts must amount to more than a mere hunch, a guess, or a vague suspicion. *Williams v. State,* 621 S.W.2d 609, 612 (Tex.Crim.App. 1981). The articulable facts used by the officers must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to a crime or an offense. *Garza,* 771 S.W.2d at 558.

■ The reasonable suspicion determination is based on the totality of the circumstances and is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Thus, when examining the totality of the circumstances, the quantity and quality of the information available to the police officer must be considered. *Id.* When information alleged to support reasonable suspicion comes from a totally anonymous source, something more than the anonymous tip is required to provide the reasonable suspicion necessary to make a valid investigatory stop of a person suspected of criminal activity. *Id.* at 329, 110 S.Ct. 2412. An anonymous tip standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention because it seldom demonstrates the informant's basis of knowledge or veracity. *Id.*

■ Corroboration of public facts alone will not suffice to establish reliability of an anonymous informant whose credibility is unknown. *Knight v. State,* 814 S.W.2d 545, 547 (Tex.App.—Houston [1st Dist.] 1991, no pet.). Relying on information received from an informant is acceptable "so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Illinois v. Gates,* 462 U.S. 213, 242, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Knight,* 814 S.W.2d at 547. But, there must be some indicia of reliability of the tip. *Gates,* 462 U.S. at 233, 103 S.Ct. 2317; *Knight,* 814 S.W.2d at 547.

■ Standing alone, the tip in the present case completely lacks the necessary indicia of reliability, because it provides no information from which to conclude the caller was honest or his information reliable and gives no indication for the basis of his predictions regarding appellant's criminal activities. Considering the totality of the circumstances, significant aspects of the tipster's information were sufficiently corroborated by the police to furnish reasonable suspicion. A man named "Cucco," who fit the description provided, arrived at a Shipley's Do-nut shop within the time frame predicted by the caller. He was driving a white Chevrolet Astrovan, as described.

This prediction of appellant's future behavior of timely arriving at this unusual location demonstrates a special familiarity with his affairs. Thus, there was reason to

believe the caller was honest and well informed, which imported some degree of reliability to his allegation that appellant was engaged in criminal activity. *White*, 496 U.S. at 331–32, 110 S.Ct. 2412. We therefore hold that McClain was justified in his investigative detention of appellant in order to maintain the status quo momentarily while obtaining more information.

We overrule points of error one and two.

### Reasonable Suspicion/Probable Cause to Search

In points of error five and six, appellant claims the trial court erred in failing to suppress all fruits of appellant's arrest, because the State failed to sustain its burden of demonstrating either reasonable suspicion or probable cause to search appellant for weapons in violation of the Fourth Amendment and the Texas Constitution. He argues the record does not contain any specific or articulable facts from which McClain could have reasonably believed appellant might have been armed or dangerous.

In the course of an investigative detention, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex.Crim.App.1984). *Terry* does not authorize a frisk for weapons in all confrontational encounters. *Maryland v. Buie*, 494 U.S. 325, 333–34, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). A limited frisk or pat down for weapons for one's protection is authorized when an officer, under his circumstances at the time, can conclude on some objective, reasonable basis that his safety is in danger. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868; *Salazar v. State*, 893 S.W.2d 138, 143–44 (Tex.App.— Houston [1st Dist.] 1995, pet. ref'd, untimely filed). The purpose of a limited search after an investigatory stop is not to discover evidence of crime, but to allow the peace officer to pursue investigation without fear of violence. *Wood v. State*, 515 S.W.2d 300, 306 (Tex.Crim.App.1974).

To assess the reasonableness of McClain's conduct in searching appellant, "specific and articulable facts" must appear in the record which would warrant a self-protective search for weapons. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868. The record reflects that the investigative detention occurred in the middle of the day in a public parking area at a location that was not designated a high crime area. There was no information from the caller that appellant was to be considered armed or dangerous. In fact, during the detention, appellant was cooperative and did nothing furtive or suspicious that might have indicated to an investigating officer his safety was in jeopardy. Likewise, McClain knew he was dealing with the possibility, at most, of a small amount of cocaine.

The only evidence in the record regarding McClain's safety was his answer in response to the State's question whether he patted down appellant for his own protection. McClain acquiesced and stated he patted down appellant looking for weapons and contraband. McClain never articulated why he considered the circumstances were unsafe in order to justify the frisk.

The State argues that because of McClain's testimony in conjunction with the violent nature of narcotics transactions, it was reasonable for McClain to suspect appellant might have been carrying a weapon. We disagree. These reasons are merely the "unparticularized" suspicions or "hunches" which *Terry* held are not enough to justify a self-protective search. Also, it is obvious that McClain was searching for the cocaine. He not only stated as much, but the anonymous caller told McClain the cocaine would be in Cucco's pocket. Furthermore, McClain's pat-down was not a traditional pat-down search. It went beyond that when McClain started feeling the two small packets that could not have been a weap-

on, but that he claimed he recognized as cocaine.

We therefore conclude, after a review of the entire record, McClain had no reasonable, individualized suspicion, under the authority of *Terry,* to justify a pat down search for weapons. Thus, we hold the trial court abused its discretion in denying appellant's motion to suppress the cocaine.

We sustain points of error five and six.

Because our holding on points of error five and six is dispositive, we find it unnecessary to address the remaining points of error. Accordingly, the judgment is reversed, and this cause is remanded to the trial court.