PD-1356-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/20/2015 9:45:15 AM
Accepted 10/20/2015 4:54:10 PM
ABEL ACOSTA
CLERK

# NO. PD-1356-15

## IN THE
## COURT OF CRIMINAL APPEALS OF TEXAS

# RICARDO SOTO

**Appellant**

v.

# STATE OF TEXAS

**Appellee**

## APPELLANT'S PETITION
## FOR DISCRETIONARY REVIEW

Petition from the 66th Judicial District Court of Hill County, Texas
Trial Court Cause Number 38,173 and
Cause Number 10-15-00029-CR in the Tenth Court of Appeals of Texas

**Chelsea Tijerina**
State Bar No. 24076733
E-mail: attorneychelsea@gmail.com

**LAW OFFICE OF SIMER & TETENS**
3706 Bellmead Drive
Waco, Texas 76705
(254) 412-2300
(888) 317-7610—Facsimile

FILED IN
COURT OF CRIMINAL APPEALS

October 20, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

Appellant, pursuant to Rule of Appellate Procedure 38.1(a), provides the following list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel.

Appellant:

**Ricardo Soto**
21040 West Lincoln Avenue
New Berlin, Wisconsin 53146

Trial Court Judge:

**Hon. F.B. (Bob) McGregor Jr.**
66th Judicial District Court Judge
Post Office Box 284
Hillsboro, Texas 76645
Telephone: 254-582-4045

Trial Counsel for Appellant:

**Josh Tetens**
Simer & Tetens
3706 Bellmead Drive
Waco, Texas 76705
Telephone: 254-412-2300

Appellate Counsel for Appellant:

**Chelsea Tijerina**
Simer & Tetens
3706 Bellmead Drive
Waco, Texas 76705
Telephone: 254-412-2300

Trial and Appellate Counsel for State:

**Mark Pratt**
Hill County District Attorney's Office
P.O. Box 400
Hillsboro, Texas 76645
Telephone: 254-582-4070

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................... 1

INDEX OF AUTHORITIES.................................................................................. 4

STATEMENT REGARDING ORAL ARGUMENT......................................................... 6

STATEMENT OF THE CASE/
STATEMENT OF PROCEDURAL HISTORY............................................................. 6

ISSUE

        The Tenth Court of Appeals erred in finding the search of Appellant valid
        under *Terry v. Ohio*.............................................................................. 7

REASON FOR REVIEW

        The Tenth Court of Appeals disregarded established case law from the United
        States Supreme Court, this Honorable Court, and sisters courts of appeal to find
        the search of Appellant's person constitutionally justified and within the scope of
        *Terry v. Ohio*.................................................................................. 8

ARGUMENT........................................................................................ 9

    I.     Factual Basis.............................................................................. 9

    II.    Case Law

        A *Terry* search is appropriate where the officer has reasonable,
        articulable facts that a person is armed and dangerous, and the
        officer strictly tailors his search to a pat down for weapons.............. 10

    III.   Conclusion.............................................................................. 17

PRAYER FOR RELIEF............................................................................. 18

CERTIFICATE OF SERVICE..................................................................... 18

CERTIFICATE OF COMPLIANCE.............................................................. 19

APPENDIX:        *Soto v. State*, 2015 Tex. App. LEXIS 8524 (Tex. App.—Waco August 13, 2015, no pet. h.).

# INDEX OF AUTHORITIES

**Texas Cases:**

Page No.

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)............................... 9, 11, 12, 16

*Griffin v. State*, 215 S.W.3d 403 (Tex. Crim. App. 2007)............................................. 12

*Lippert v. State*, 664 S.W.2d 712 (Tex. Crim. App. 1984)........................................... 12

*Del Carmen Moreno v. State*, 797 S.W.2d 228
(Tex. App.—Corpus Christi 1990, no pet.)............................................................. 12, 16

*Guevara v. State*, 6 S.W.3d 759 (Tex. App.—Houston [1st Dist.] 1999)....................... 11, 16

*O'Hara v. State*, 27 S.W.3d 548 (Tex. Crim. App. 2000)............................................ 11

*Ramirez v. State*, 672 S.W.2d 480 (Tex. Crim. App. 1984)......................................... 16

*State v. Phillips*, 752 S.W.2d 194 (Tex. App.—Amarillo 1988, no writ.)..................... 12, 16

*State v. Williams*, 312 S.W.3d 276 (Tex. App.—Houston [14th Dist.] 2010, no pet.)........ 13, 16

*Wood v. State*, 515 S.W.2d 300 (Tex. Crim. App. 1974)............................................. 13

*Worthey v. State*, 805 S.W.2d 435 (Tex. Crim. App. 1991)......................................... 16

**Federal Cases:**

Page No.

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971)..................................................... 16

*Katz v. United States*, 389 U.S. 347 (1967)............................................................. 11

*Maryland v. Buie*, 494 U.S. 325 (1990)................................................................... 11

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998)........................................................... 11

*Sibron v. New York*, 392 U.S. 40 (1968)............................................... 9, 10, 12, 13, 15, 16

*Terry v. Ohio*. 392 U.S. 1 (1968)............................................ 2, 8, 9, 10, 11, 12, 14, 15, 16

*Ybarra v. Illinois*, 444 U.S. 85 (1979)............................................................... 11, 16

**Federal Statutes:**

U.S. CONST. Amend. IV................................................................................. 8, 10, 11

**State Statutes:**

Page No.

TEX. R. APP. P. 66.3...................................................................................... 8, 17

## STATEMENT REGARDING ORAL ARGUMENT

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

Oral argument would not benefit this Honorable Court as the issues in this case are quite straightforward.

## STATEMENT OF THE CASE/
## STATEMENT OF PROCEDURAL HISTORY

This is a criminal case in which Ricardo Soto was convicted of possessing less than one gram of cocaine.[1] In Cause Number 38,173, Mr. Soto was indicted as follows:

"**RICARDO SOTO** hereinafter styled Defendant, on or about the **27TH day of FEBRUARY, 2014** and before the presentment of this indictment, in the County of Hill and State aforesaid, did then and there intentionally or knowingly possess a controlled substance, namely, cocaine of less than 1 gram, including any adulterants or dilutants."[2]

Appellant moved to suppress evidence obtained during law enforcement's illegal search of his person.[3] The district court denied Appellant's Motion to Suppress.[4]

The case was tried to the bench on December 5, 2014 in the 66th Judicial

---

[1] (I C.R. at 20–21).
[2] (I C.R. at 4).
[3] (I C.R. 5–6).
[4] (I C.R. at 7).

District Court before the Honorable Judge F.B. (Bob) McGregor.[5] During the bench trial, Appellant re-urged his motion to suppress evidence and the district court again denied said motion.[6] The district court found Appellant guilty of possession of a controlled substance in penalty group one in the amount of one gram or less and assessed punishment as follows: 20 months state jail probated for 4.5 years and a fine of $2,000.00.[7]

Appellant timely filed a Notice of Appeal on December 5, 2014.[8] On appeal, the Tenth Court of Appeals upheld the legality of the search and denied Appellant's sole issue.[9] Thereafter, the Tenth Court denied Appellant's Motion for Rehearing on September 3, 2015. The Court granted one motion for an extension of time in which to file the Petition for Discretionary Review; therefore, the Petition for Discretionary Review is due by November 4, 2015.

## ISSUE

The Tenth Court of Appeals erred in upholding the unconstitutional search of Appellant.

---

[5] (I C.R. at 20).
[6] (1 R.R. at 17).
[7] (I C.R. at 20–21).
[8] (I C.R. at 27).
[9] *Soto v. State*, 2015 Tex. App. LEXIS 8524 at *10 (Tex. App.—Waco August 13, 2015) (mem.

The Tenth Court of Appeals has blatantly disregarded the Fourth Amendment's guarantee against unreasonable searches. In Mr. Soto's case, the Tenth Court of Appeals held that the reasonable suspicion necessary to warrant a *Terry* frisk need not be particularized to the person searched.[10] The Tenth Court of Appeals further held that *Terry v. Ohio* permits an officer to remove a person's outer clothing during a search for weapons if the person's outer clothing is "not transparent."[11]

The Tenth Court of Appeals' decision in this case conflicts with decisions from the United States Supreme Court and this Honorable Court[12] as well as with decisions from sister courts of appeal.[13] Additionally, the Tenth Court of Appeals "has so far departed from the accepted and usual course of judicial proceedings… as to call for an exercise of the Court of Criminal Appeals' power of supervision."[14] Left unchecked by this Honorable Court, the Tenth Court of

---

op., not designated for publication).

[10] *Soto v. State*, 2015 Tex. App. LEXIS 8524, at *4 (Tex. App.—Waco August 13, 2015, no pet. h.) (mem. op., not designated for publication).

[11] *Id.*, at *5.

[12] Tex. R. App. P. 66.3(c).

[13] Tex. R. App. P. 66.3(a).

[14] Tex. R. App. P. 66.3(f).

Appeals' holding in Mr. Soto's case will exponentially expand the justifications for and the breadth of a *Terry* search.

## ARGUMENT

An officer may frisk a person for weapons under *Terry v. Ohio* only when the officer has reasonable, articulable facts directed to the person searched that the person is armed and dangerous.[15] Despite the particularity requirement, the Tenth Court of Appeals found the officer's search of Appellant valid under *Terry v. Ohio* based solely on the officer's knowledge that Appellant's companion had a criminal history.[16]

Although the search approved by *Terry v. Ohio* consists solely of a "limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault,[17] the Tenth Court of Appeals found the officer's removal of Appellant's outer clothing constitutionally sound based on the fact that Appellant's outer clothing was "not transparent."[18]

### I. *Factual Basis*

The Tenth Court of Appeals set forth the following facts in its opinion:

---

[15] *Terry v. Ohio.* 392 U.S. 1, 25 (1968); *Sibron v. New York*, 392 U.S. 40, 65 (1968); *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000).

[16] *Soto v. State*, 2015 Tex. App. LEXIS 8524, at *4 (Tex. App.—Waco August 13, 2015, no pet. h.) (mem. op., not designated for publication).

[17] *Sibron*, 392 U.S. at 65.

Soto was travelling in a vehicle with four other people which was stopped for vehicle equipment violations by Joe Abreu who, at the time, was working for the Hillsboro Police Department. The driver of the vehicle gave his consent for Abreu to search the vehicle. After getting everyone out of the vehicle, Abreu decided to pat-down all the occupants for weapons. Soto was wearing a cap. Abreu attempted to pat-down the cap and removed it from Soto's head. When he removed the cap, a folded dollar bill fell out. The dollar bill contained under an ounce of cocaine...[19]

Abreu removed five individuals, including Soto, from the vehicle. He had information that at least one of the other individuals had a criminal history of possessing a controlled substance with intent to distribute and was known to traffic large amounts of cocaine...

Abreu testified that Soto was wearing a cap and that the cap was not transparent to be able to see whether there was a weapon in it. Further, Abreu testified that a bladed weapon like a razorblade inside a cap would not necessarily be felt when a cap is patted against someone's head. Through training at the police academy and experience, Abreu had learned that the only proper way to search a cap for bladed weapons is to remove the cap from the person's head.[20]

## II. Case Law

a. *To conduct a frisk for weapons, an officer must have reasonable, articulable facts particularized to the person to be searched that the person is armed and dangerous.*

Law enforcement may not place hands on a citizen "in search of anything"

---

[18] *Soto*, 2015 Tex. App. LEXIS 8524, at *5.

[19] *Soto*, 2015 Tex. App. LEXIS 8524, at *1.

[20] *Id.*, at *4.

without "constitutionally adequate, reasonable grounds for doing so."[21] The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures.[22] "Searches conducted without a warrant are unreasonable *per se* under the Fourth Amendment, subject only to a few and well-delineated exceptions."[23]

In the interest of officer safety, the United States Supreme Court created an exception to the general rule prohibiting warrantless searches which allows officers to frisk or "pat down" a person to determine whether the person is carrying a weapon.[24]

"*Terry* does not authorize a frisk for weapons in all confrontational encounters."[25] A "weapons frisk" is justified only where the officer can point to specific, articulable facts which reasonably lead him to conclude that the suspect might possess a weapon.[26] Because every individual is "clothed with constitutional protection against an unreasonable search,"[27] a *Terry* search for weapons must be based on a reasonable suspicion particularized to the person

[21] *Sibron v. New York*, 392 U.S. 40, 64 (1968).
[22] U.S. CONST. Amend IV; *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).
[23] *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).
[24] *Terry v. Ohio*. 392 U.S. 1, 24 (1968).
[25] *Guevara v. State*, 6 S.W.3d at 764 (citing *Maryland v. Buie*, 494 U.S. 325, 333–334 (1990)).
[26] *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000).

searched.[28]

A person's mere proximity to others independently suspected of criminal activity does not, without more, justify a search of that person.[29] An officer may not search a person in a vehicle merely because another occupant of the vehicle is suspected of criminal activity.[30]

The nature of the suspected criminal activity is a relevant consideration in determining whether a frisk is warranted.[31] However, an officer may not "base a determination that his safety is in danger solely upon the basis that 'the suspect is a drug dealer.'"[32]

### b.     The scope of a Terry search must be carefully limited.

Under *Terry v. Ohio*, the frisk must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."[33] The search for weapons approved in *Terry* consists solely of a limited *patting* of the outer clothing of the suspect for

---

[27] *Ybarra v. Illinois*, 444 U.S. 85, 94 (1979).
[28] *Lippert v. State*, 664 S.W.2d 712, 717 (Tex. Crim. App. 1984).
[29] *Del Carmen Moreno v. State*, 797 S.W.2d 228, 230–231 (Tex. App.—Corpus Christi 1990, no pet.) (citing *Terry v. Ohio*, 392 U.S. 40 (1968)).
[30] *State v. Phillips*, 752 S.W.2d 194, 196 (Tex. App.—Amarillo 1988, no writ.).
[31] *Carmouche*, 10 S.W.3d at 330.
[32] *Griffin v. State*, 215 S.W.3d 403, 411 (Tex. Crim. App. 2007) (citing *Terry*, 392 U.S. at 33)).
[33] 392 U.S. at 29.

concealed objects which might be used as instruments of assault.[34] A search for narcotics, rather than weapons, during the frisk is not allowed.[35]

"The purpose of a limited search after investigatory stop is not to discover evidence of crime but to allow the peace officer to pursue investigation without fear of violence. So long as the officer... has reason to believe that the suspect is armed and dangerous, the officer may conduct a weapons search limited in scope to the purpose of enabling the officer to pursue investigation without fear of violence."[36] When conducting a pat-down search, an officer may not employ a more intrusive means of searching the suspect without first patting down the suspect and feeling potential weapons.[37]

      c.     ***The officer lacked reasonable suspicion directed to Appellant that Appellant was armed and dangerous.***

In Mr. Soto's case, the officer not only testified that he did not fear for his

---

[34] *Sibron v. New York*, 392 U.S. 40, 65 (1968)

[35] *Id.* at 64.

[36] *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974) (holding the search appropriate where "limited to a 'pat down'").

[37] *State v. Williams*, 312 S.W.3d 276, 283 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (an officer's requesting the suspect to move her bra strap due to fear she might have a knife in her bra went beyond the bounds of a *Terry* frisk); *Sibron v. New York*, 392 U.S. 40, 65 (1968) (holding that the officer exceeded the permissible scope of a pat down search for weapons by making "no attempt at an initial limited exploration for arms" and instead "thrust[ing] his hand into [Appellant's] pocket").

safety when he detained Mr. Soto and his companions on the side of the highway[38] but also that Appellant and his companions "seemed to be very cooperative."[39] The officer further stated that neither Appellant nor any of the other occupants of the vehicle made "any threatening gestures or comments."[40] The officer stated that at the time of the detention, he had no knowledge that Appellant had any criminal history.[41]

Despite Appellant's compliance during his encounter with the officer, the officer decided to frisk Appellant for weapons. The Tenth Court of Appeals held that the officer was justified in searching Appellant because the officer had "removed five individuals [from the vehicle], including Appellant," one of whom "had a criminal history of possessing a controlled substance with intent to distribute and was known to traffic large amounts of cocaine."[42]

By holding that the search of Appellant's person was justified under *Terry v. Ohio* based solely on law enforcement's knowledge that Appellant's associate had a criminal history, the Tenth Court of Appeals stands in gross contravention of this Court's and the Supreme Court's rulings. As such, this Court should grant the

---

[38] (1 R.R. at 20).
[39] (1 R.R. at 18); (1 R.R. at 21).
[40] (1 R.R. at 20–21).
[41] (1 R.R. at 24).
[42] *Soto v. State*, 2015 Tex. App. LEXIS 8524, at *4 (Tex. App.—Waco August 13, 2015, no pet.

Petition for Review.

> **d.** **_The officer exceeded the scope of Terry by removing Appellant's outer garment._**

In this case, the officer's frisk of Appellant was not confined in scope to a "limited *patting* of the outer clothing" as authorized by *Terry v. Ohio*.[43] Rather than patting down Appellant's outer clothing, the officer opted to remove it.[44] By removing Appellant's outer clothing, the officer employed a more intrusive means of searching the suspect without first patting down the suspect and feeling potential weapons.[45]

The officer testified to the following regarding his search of Appellant:

Defense Counsel: "You didn't pat down [Appellant]'s hat prior to removing it, did you?"

Officer: "No, sir."

Defense Counsel: "And once you did pat down the hat after you removed it, there wasn't anything that you felt by touch or contraband that you felt by touch in the hat, was there?"

Officer: "No, sir."[46]

The Tenth Court of Appeals' bizarre reasoning for why the officer did not

---

h.).
[43] *Sibron v. New York*, 392 U.S. 40, 65 (1968).
[44] *Soto*, 2015 Tex. App. LEXIS 8524, at *5.
[45] *See State v. Williams*, 312 S.W.3d 276, 283 (Tex. App.—Houston [14th Dist.] 2010, no pet.).
[46] (1 R.R. at 21).

exceed the scope of *Terry* by removing Appellant's cap was as follows: **"the cap was part of his outer clothing, like a jacket or overcoat"** and **"was not transparent to be able to see whether there was a weapon in it...** [A] bladed weapon like a razorblade inside a cap would not necessarily be felt when a cap is patted against someone's head."[47]

### e.     *The Tenth Court of Appeals' ruling conflicts with decisions from the United States Supreme Court, this Honorable Court and Sister Courts of Appeal*

The Tenth Court of Appeals' decision in this case conflicts with decisions from the United States Supreme Court,[48] this Honorable Court,[49] and sister courts of appeal.[50] With the exception of Mr. Soto's case, there is no court-created exception to the general rule that a warrantless search is unreasonable *per se*[51] enabling law enforcement to *remove* a suspect's outer cloth in order to conduct a weapons search.

By finding that removing a person's cap falls within the purview of *Terry*

---

[47] *Id.*

[48] *Terry v. Ohio.* 392 U.S. 1 (1968); *Sibron v. New York*, 392 U.S. 40, 65 (1968); *Ybarra v. Illinois*, 444 U.S. 85, 94 (1979).

[49] *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002); *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991); *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex. Crim. App. 1984)).

[50] *Del Carmen Moreno v. State*, 797 S.W.2d 228, 230–231 (Tex. App.—Corpus Christi 1990, no pet.); *State v. Phillips,* 752 S.W.2d 194, 196 (Tex. App.—Amarillo 1988, no writ.); *Guevara v. State*, 6 S.W.3d 759,764 (Tex. App.—Houston [1st Dist.] 1999).

due to the opaqueness of the cap, the Tenth Court of Appeals has created an appalling precedent whereby law enforcement may strip a person of his outer garments based on the officer's inability "to be able to see"[52] through a person's clothing to determine whether a person possesses a weapon.

### III.   Conclusion

Upholding the illegal search of Appellant required the Tenth Court of Appeals to wholly disregard law from this Honorable Court and the Supreme Court[53] and to so far depart from the accepted and usual course of judicial proceedings, as to demand an exercise of the Court of Criminal Appeals' power of supervision.[54] Therefore, this Honorable Court should grant review.

---

[51] *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971).
[52] *Id.*
[53] TEX. R. APP. P. 66.3(c).
[54] TEX. R. APP. P. 66.3(f).

## PRAYER FOR RELIEF

Mr. Soto prays that this Court grant his Petition for Discretionary Review.

Respectfully submitted,

**LAW OFFICE OF SIMER & TETENS**

/s/ *Chelsea Tijerina*

Chelsea Tijerina
3706 Bellmead Drive
Waco, Texas 76705
(254) 412-2300
(888) 317-7610—Facsimile
E-mail: attorneychelsea@gmail.com
State Bar No. 24076733
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

On October 20, 2015, a copy of this Petition for Discretionary Review was delivered to the Hill County District Attorney by email.

/s/ *Chelsea Tijerina*
Chelsea Tijerina

# CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 2,299 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1), and

2.  This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using Microsoft Word in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

/s/ *Chelsea Tijerina*
Chelsea Tijerina
Attorney for Appellant



1 of 1 DOCUMENT

**RICARDO SOTO, Appellant v. THE STATE OF TEXAS, Appellee**

**No. 10-15-00029-CR**

**COURT OF APPEALS OF TEXAS, TENTH DISTRICT, WACO**

*2015 Tex. App. LEXIS 8524*

**August 13, 2015, Opinion delivered**
**August 13, 2015, Opinion Filed**

**NOTICE:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1] From the 66th District Court. Hill County, Texas. Trial Court No. 38,173.

**DISPOSITION:** Affirmed.

**JUDGES:** Before Chief Justice Gray, Justice Davis, and Justice Scoggins.

**OPINION BY:** TOM GRAY

**OPINION**

## MEMORANDUM OPINION

Ricardo Soto was convicted after a bench trial of possession of less than one gram of cocaine and sentenced to 20 months in a state jail facility. *See TEX. HEALTH & SAFETY CODE ANN. § 481.115* (West 2010). His sentence was suspended, and Soto was placed on community supervision for four and a half years. Because the trial court did not err in denying Soto's motion to suppress, we affirm the trial court's judgment.

## BACKGROUND

Soto was travelling in a vehicle with four other people which was stopped for vehicle equipment violations by Joe Abreu who, at the time, was working for the Hillsboro Police Department. The driver of the vehicle gave his consent for Abreu to search the vehicle. After getting everyone out of the vehicle, Abreu decided to pat-down all the occupants for weapons. Soto was wearing a cap. Abreu attempted to pat-down the cap and removed it from Soto's head. When he removed the cap, a folded dollar bill fell out. The dollar bill contained under an ounce of cocaine. Prior to trial, Soto filed a motion to suppress the [*2] cocaine. After a hearing, the trial court denied the motion. It was again denied during Soto's trial.

## MOTION TO SUPPRESS

In his sole issue on appeal, Soto asserts that the trial court erred in denying his motion to suppress. Specifically, Soto contends the pat-down of Soto was not valid pursuant to *Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)* because 1) the officer was not afraid of Soto or the others that were removed from the vehicle; and 2) the officer exceeded the scope of *Terry* by removing Soto's cap.

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Robinson, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011); State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).* The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede v. State, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007).* We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts. *Hereford v. State, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011); State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).*

## TERRY FRISK

The *Fourth Amendment* prohibits unreasonable searches and seizures. *O'Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000)*. Searches conducted without a warrant are unreasonable per se under the *Fourth Amendment*, subject only to a few specifically established and well-delineated exceptions. *Id.* One exception occurs when an officer [*3] is justified in believing that an individual is armed and presently dangerous. *Id.* In that situation, the officer may conduct a pat-down search to determine whether the person is carrying a weapon. *Id.* Before conducting a pat-down search, an officer need only be able to "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968)*; *O'Hara, 27 S.W.3d at 550-551*. The officer need not be absolutely certain that the individual is armed. *O'Hara, 27 S.W.3d at 551*. The issue is whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger. *Terry, 392 U.S. at 27*.

### Justification

Soto first complains Abreu lacked justification to frisk Soto pursuant to *Terry* because Abreu testified that he was not in fear of his safety. The Court of Criminal Appeals has made it clear that an officer's failure to testify that he was afraid of the suspect does not automatically invalidate a frisk for weapons. *O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000)*; *Jones v. State, 69 S.W.3d 275, 278 (Tex. App.--Austin 2002, pet. ref'd)*. Regardless of whether Abreu stated he was afraid, the validity of the search must be analyzed by determining whether the facts available to Abreu at the time of the search would warrant a reasonably cautious person to believe that the action taken, [*4] *i.e.* a frisk for weapons, was appropriate.

Abreu removed five individuals, including Soto, from the vehicle. He had information that at least one of the other individuals had a criminal history of possessing a controlled substance with intent to distribute and was known to traffic large amounts of cocaine. Coupled together, these facts made Abreu feel that his safety would be in danger if he did not pat down the individuals, including Soto, before Abreu turned his back on them and conducted a search of the vehicle. Based on these facts, Abreu was justified in conducting a *Terry* frisk for weapons. Thus, under this theory, the trial court did not err in denying Soto's motion to suppress.

### Scope

Next, Soto complains that Abreu exceeded the scope of a *Terry* frisk for weapons because Abreu removed Soto's cap rather than patting it down on Soto's head.

Abreu testified that Soto was wearing a cap and that the cap was not transparent to be able to see whether there was a weapon in it. Further, Abreu testified that a bladed weapon like a razorblade inside a cap would not necessarily be felt when a cap is patted against someone's head. Through training at the police academy and experience, Abreu [*5] had learned that the only proper way to search a cap for bladed weapons is to remove the cap from the person's head.

Police officers may conduct a limited search for weapons of the suspect's outer clothing. *See Balentine v. State, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002)*; *Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000)*; *see also Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)*. Soto cites to no authority that prohibits the removal of a cap that is being worn prior to a pat-down of the cap. He only cites to a case from Houston where it was held that an officer's request for a suspect to move her bra strap due to fear that she might have a weapon in her bra exceeded the scope of a *Terry* frisk. *See State v. Williams, 312 S.W.3d 276, 283 (Tex. App.--Houston [14th Dist.] 2010, no pet.)*.

*Williams* is distinguishable because the frisk involved undergarments. Soto's cap was part of his outer clothing, like a jacket or overcoat, not his undergarments.[1] When it was removed from Soto's head to be checked for weapons according to the officer's training, a folded dollar bill fell out. When Abreu retrieved the dollar, he noticed a white substance in it that he believed to be cocaine. Soto confirmed the substance was cocaine, as did a lab test. Accordingly, because the cap was outer clothing, Abreu did not exceed the scope of *Terry*, and the trial court did not err denying Soto's motion to suppress under this theory.

[1] We note the distinction [*6] between undergarments, clothing, and outer clothing and believe the distinction is critical to the manner in which a *Terry* pat-down can be properly administered.

## CONCLUSION

Soto's sole issue is overruled, and the trial court's judgment is affirmed.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion delivered and filed August 13, 2015

Do not publish